UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                      :
ISATOU DUKURAY,                                       :        23 Civ. 9043 (AT) (GS)
                                                      :
                           Plaintiff,                 :        REPORT &
                                                      :        RECCOMENDATION
            - against -                                :
                                                      :
EXPERIAN INFORMATION SOLUTIONS;                        :
EQUIFAX; and TRANSUNION CORP.,                         :
                                                      :
                           Defendants.                :
---------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Isatou Dukuray, proceeding *pro se*, seeks relief under the Fair Credit

Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), for alleged inaccuracies reported

in her credit history.  Defendants Experian Information Solutions, Inc. ("Experian")

and Trans Union, LLC ("Trans Union") move to dismiss Plaintiff's claims under

Federal Rules of Civil Procedure 12(b)(6) and 12(c).  (Dkt. Nos. 21, 23).  For the

reasons set forth below, the undersigned respectfully recommends that Defendants'

motions be **DENIED**.

## BACKGROUND

### A.    Plaintiff's Factual Allegations

Plaintiff initiated this action against Experian, Trans Union, and Equifax

Information Services, LLC ("Equifax") on August 3, 2023 in the Civil Court of the

City of New York for Bronx County.  (Dkt. No. 1-1).[1]  On October 13, 2023, Trans

---

[1] This Report & Recommendation identifies the three Defendants by their proper corporate names,
as represented by Defendants (*see, e.g.*, Dkt. Nos. 1, 19, 20, 23), rather than the names used in the
Complaint.

Union removed the action to this Court, with the consent of Experian and Equifax, invoking the Court's federal question jurisdiction based on Plaintiff's pleading of FCRA claims.  (Dkt. Nos. 1 at ¶ 3, 1-2, 1-3 ).[2]

The Complaint consists of a one-page form entitled "Summons with Endorsed Complaint" and several attachments.  (Dkt. No. 1-1).  The form itself contains no more than three substantive lines, wherein Plaintiff states she is seeking "$9,000 with interest from 02/01/2021" for Defendants' failure to comply with various provisions of the FCRA.  (*Id*.).

The attachments shed additional light on Plaintiff's allegations.  These include a letter dated July 1, 2023 from Plaintiff addressed to Trans Union (*id*. at 3–5)[3] and a document, apparently compiled by a third-party, which provides a line-by-line comparison of Plaintiff's credit history reported by Trans Union, Experian, and Equifax, respectively ("Credit Report") (*id*. at 6–34).  In the July 2023 letter, Plaintiff lists the names of the accounts on her Credit Report that she has been "disputing for the past year" along with a corresponding one-line description of the dispute.  (*Id*. at 3–5).  For instance, Plaintiff writes "BRCLYGAP—Requested a deletion," "SELFINC/LEAD—Requested for late payment to be updated," and so on. (*Id*. at 3).  Plaintiff writes in the July 2023 letter that she is "seeking litigation" because the listed accounts "are still reporting in error" and "have not been

---

[2] Plaintiff has not contested removal or this Court's jurisdiction.

[3] The undersigned refers to the ECF-assigned page numbers throughout this Report & Recommendation when citing to pages within Plaintiff's submissions, as most of her papers are not otherwise paginated.

corrected nor deleted from [her] credit report." (Dkt. No. 1-1 at 3). On the Credit Report itself, Plaintiff makes handwritten annotations pointing out "inconsisten[cies]," "errors," information that is "not accurate," and accounts that should be "deleted," but does not provide further elaboration. (*See generally id*. at 6–34).

In opposing Defendants' motions to dismiss, Plaintiff submits four additional documents. (Dkt. No. 29-1). The first is an undated letter from Plaintiff to Experian in which Plaintiff lists the names of accounts she disputes on her Credit Report; unlike the July 2023 letter, this letter provides further specificity as to why she disputes each account. (*Id*. at 1–3). With respect to four accounts—"Barclays Gap,"[4] "NEW YORK UNIVERSITY" ("NYU"), "DISCOVER SL" ("Discover") and "ACIMA DIGITAL FKA SIMP" ("Acima Digital")—Plaintiff writes she has "disputed [the accounts] multiple times" because they are "not [her] account[s]." (*Id*. at 1–2). For the NYU account in particular, Plaintiff writes she has "never attended this university." (*Id*.). On the other hand, with respect to the accounts "SELFINC/LEAD" ("Self Inc.") and "MUNCPL CR UN" ("MCU"), Plaintiff does not represent the accounts are not hers, but states she has "disputed on multiple occasions" particular items of information associated with the accounts. (*Id*. at 1 (stating "late payment and incomplete last payment status date not showing" as to the Self Inc. account and "date of last payment is wrong" for the MCU account, as it "should have been July 5, 2021")).

---

[4] The Court understands Plaintiff uses "Barclays Gap" and "BRCLYGAP" interchangeably throughout her submissions to refer to the same account.

In the same undated letter, Plaintiff writes that she has provided Experian with a Federal Trade Commission Identity Theft Report ("FTC Report"), a copy of which is also attached to her opposition. (Dkt. No. 29 at 1, 15–16). The FTC Report, which is dated April 10, 2023 and executed by Plaintiff "under penalty of perjury," states under the heading "Personal Statement": "My information [has] been compromised and for that reason there are many accounts on my credit report that [are not] mine and need[] to be removed." (*Id*. at 15). Under the heading "Accounts Affected by the Crime," the same four accounts are listed: Barclays Gap, NYU, Discover, and Acima Digital. (*Id*.). Plaintiff does not, however, list the Self Inc. or MCU accounts.

The third document is an "Identity Theft Victim's Complaint and Affidavit" ("Affidavit") executed by Plaintiff on March 15, 2023 in the presence of a notary. (Dkt. No. 29-1 at 9–14). This document is a form affidavit described as a "voluntary form for filing a report with law enforcement, and disputes with credit reporting agencies and creditors about identity-theft related problems." (*Id*. at 9). In the Affidavit, Plaintiff represents that her "information has been compromised" and lists the Barclays Gap, NYU, and Discover accounts as ones that have been "opened fraudulently." (*Id*. at 10, 12).[5] In addition, Plaintiff identifies Barclays Gap, NYU, Discover, and Acima Digital as creditors that have made "credit inquires" that appear on her Credit Report, which are the "result of this identity theft." (*Id*. at 11). When prompted by the form to provide additional information, such as "how the

_____

[5] There are only three spaces provided on the face of the form Affidavit to list fraudulently opened accounts. (Dkt. No. 29-1 at 12).

identify thief gained access to [the victim's] information," Plaintiff theorizes the theft may have been a result of the "Equifax Data Breach" or a past occasion when she lost her purse.  (*Id*.).

The final document is a claim form entitled "Equifax Data Breach Settlement," dated January 15, 2023 and, it appears, submitted to Equifax that same day ("Claim Form").  (Dkt. No. 29-1 at 4–8).[6]  The claimant is prompted to provide "Explanation[s] of Time Spent" in connection with the data breach, as well as "Money [] Lost or Spent."  (*Id*. at 5).  Under these headings Plaintiff makes various entries, including that: (i) she "[t]raveled to the Caribbean to purchase real estate" in January 2022 and "got denied" due to "things on [her] credit" that are not hers, causing her to lose money on "travel, hotel, [and] commuting"; (ii) she was "denied for investment property with business partners" in June 2023 due to "fraud accounts" on her Credit Report; and (iii) she spent time and money "going to therapy due to stress, anxiety, and more due to the stress of [her] credit report." (*Id*. at 6).  Plaintiff signed the Claim Form while affirming that the information set forth therein was "true and correct."  (*Id*. at 7).

---

[6] Although the Claim Form is dated January 15, 2023, it seeks information about losses during the period "between January 23, 2020 and January 22, 2024."  (*Id*. at 6–7).  This fact, coupled with the fact that Plaintiff voluntarily dismissed her claims against Equifax on January 22, 2024 after reaching a settlement with Equifax (Dkt. Nos. 19, 31), raises the distinct possibility that Plaintiff misdated the Claim Form and that it was actually completed and submitted on January 15, 2024.

### B.    Plaintiff's Claims

On the face of the "Summons with Endorsed Complaint," Plaintiff states that her cause of action is for Defendants' "failure to comply with FCRA" in violation of "15USC1682e(b) 15USC1681i; 15USC1681-2(b)."  (Dkt. No. 1-1 at 2).

As Experian notes (Dkt. No. 21 at 1), of the three provisions cited by Plaintiff, only one exists: Section 1681i, which obligates credit reporting agencies ("CRAs") to conduct a reasonable reinvestigation if they are notified of an inaccuracy in a credit report.  While the Court of course agrees with Experian that Plaintiff cannot state a claim under nonexistent statutory provisions, it is reasonable to infer, and the Court does, that Plaintiff intended to reference Section 1681e(b) of the FCRA, as opposed to the erroneous, but close in number, "1682e(b)" or "1681-2(b)."  Section 1681e(b) *does* exist and is frequently brought together with a claim under Section 1681i, as Plaintiff asserts here.[7]  Both provisions generally obligate CRAs to report accurate information in accordance with reasonable procedures.

In opposition to Defendants' motions, Plaintiff cites an additional FCRA provision, 15 U.S.C. § 1681c-2, and states she is asserting a "counterclaim for identity theft" against Defendants under that provision.  (Dkt. No. 29 at 5).  Section 1681c-2 is a "blocking" provision that prohibits CRAs from reporting information that is the result of an identity theft upon receiving proper documentation from a

---

[7] *See, e.g.*, *Swainson v. Lendingclub Corp.*, No. 21 Civ. 5379 (GHW) (SLC), 2022 WL 2704629, at *6 n.3 (S.D.N.Y. June 24, 2022) (construing *pro se* complaint to raise claims for violations of Section 1681e(b) and Section 1681i), *R&R adopted*, 2022 WL 2704486 (S.D.N.Y. July 12, 2022); *Khan v. Equifax Info. Servs., LLC*, No. 18 Civ. 6367 (MKB), 2019 WL 2492762 (E.D.N.Y. June 14, 2019) (bringing claims under both Section 1681e(b) and Section 1681i).

consumer.[8]  For the reasons discussed below the Court does not view Plaintiff as having properly pled a claim under Section 1681c-2.  (*See infra* Discussion § A).

## C.    Experian's and Trans Union's Motions

On November 30, 2023, Experian submitted its Motion to Dismiss and accompanying memorandum of law in support, asserting that Plaintiff does not plausibly allege a claim under Section 1681i of the FCRA and the Complaint should be dismissed in its entirety.  (Dkt. Nos. 20 & 21 ("Def. Br.")).[9]  On December 13, 2023, Trans Union—which had previously answered the Complaint (Dkt. No. 12)— submitted a Notice of Joinder in Experian's motion, incorporating by reference Experian's memorandum of law "as though fully set forth herein by Trans Union." (Dkt. No. 23).  In view of its prior Answer, Trans Union asked the Court to treat its joinder as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (*Id*. at 1 n.1).

On December 28, 2023, Plaintiff submitted her opposition papers, including a brief presenting "arguments and case law supporting Plaintiff's claims under the [FCRA]" (Dkt. No. 29 ("Opposition" or "Opp.")) and, as described above, several attachments (Dkt. No. 29-1).

Thereafter, on February 7, 2024, Defendants submitted their reply brief. (Dkt. No. 34 ("Reply")).  The Reply contains a disturbing revelation: three of the federal cases cited in Plaintiff's Opposition "do not appear to exist" and, Defendants

---

[8] *See Phipps v. Experian*, No. 20 Civ. 3368 (LLS), 2020 WL 3268488, at *4 (S.D.N.Y. June 15, 2020).

[9] On January 3, 2024, the Honorable Analisa Torres referred Experian's motion to the undersigned for a Report & Recommendation.  (Dkt. No. 30).

suggest, may have been generated by ChatGPT. (*Id*. at 1–2). Defendants also assert that the undated letter attached to the Opposition "appears to be newly-created evidence" that is not in Experian's business records. (*Id*. at 2). They contend that the letter, along with Plaintiff's newly-raised Section 1681c-2 claim, should be disregarded. (*Id*. at 4–5, 9–10).[10]

## LEGAL STANDARDS

### A.    Motion to Dismiss for Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all factual allegations in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citation omitted). Courts need not, however, consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von*

---

[10] Experian and Trans Union submitted Certificates of Service representing Experian's motion and opening brief, Trans Union's Notice of Joinder, and their joint Reply were all promptly mailed to Plaintiff. (Dkt. Nos. 24, 25, 35).

*Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Determining whether a plausible claim has been pled is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023).

 "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up).  Accordingly, the Court must "read the pleadings of a pro se plaintiff liberally" and construe them to raise "the strongest possible arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (cleaned up).  Nonetheless, *pro se* pleadings still "must contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *Twombly*, 550 U.S. at 555).

### B.    Motion for Judgment on the Pleadings

Under Rule 12(b), "a motion to dismiss for failure to state a claim must be made before an answer is filed." *Moore v. Shahine*, No. 18 Civ. 463 (AT) (KNF), 2019 WL 948349, at *2 (S.D.N.Y. Feb. 27, 2019); *see* Fed. R. Civ. P. 12(b) (motion asserting defense under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed").  However, "even after filing an answer, a defendant may seek judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)." *Brown v. Showtime*

*Networks, Inc.*, 394 F. Supp. 3d 418, 429 (S.D.N.Y. 2019).  "A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed under the same standard applicable to a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Ngambo v. Bank of Am., N.A.*, No. 20 Civ. 2221 (NSR), 2022 WL 2067942, at *1 (S.D.N.Y. June 8, 2022).

### C.    Sections 1681e(b) and 1681i of the FCRA

The FCRA regulates consumer reporting agencies to ensure accuracy, confidentiality, relevancy, and proper utilization of consumer credit information. 15 U.S.C. § 1681(b).  It places "distinct obligations on three types of entities: consumer reporting agencies"—like Experian, Equifax, and Trans Union—as well as "users of consumer reports, and furnishers of information to consumer reporting agencies." *Perez v. Experian*, No. 20 Civ. 9119 (PAE) (JLC), 2021 WL 4784280, at *5 (S.D.N.Y. Oct. 14, 2021) (citation omitted), *R&R adopted*, 2021 WL 5088036 (S.D.N.Y. Nov. 2, 2021).  "The FCRA creates a private right of action against credit reporting agencies for the negligent, *see* 15 U.S.C. § 1681o, or willful, *see id.* § 1681n, violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995).

Section 1681e(b) broadly obligates CRAs to "follow reasonable procedures" when preparing a consumer report to "assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  When the accuracy of a report is in dispute, Section 1681i outlines specific procedures that CRAs must follow to ensure the proper reinvestigation of

disputed information.  Section 1681i requires that if a consumer notifies a CRA of a dispute as to the accuracy of any item of information contained in her file, within 30 days of notification, the CRA "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A); *see Jones v. Experian Info. Solutions, Inc.*, 982 F. Supp. 2d 268, 272 (S.D.N.Y. 2013).  "If the CRA determines after reinvestigation that the disputed information is inaccurate, incomplete, or cannot be verified, the agency must delete or modify the disputed item of information and 'notify the furnisher of that information that the information [was] modified or deleted.'" *Lewis v. Experian Info. Sols., Inc.*, No. 23 Civ. 857 (AMD) (RML), 2024 WL 1308705, at *7 (E.D.N.Y. Mar. 27, 2024) (quoting 15 U.S.C. § 1681i(a)(5)(A)(i)).

To state a claim against a CRA for negligent noncompliance with Section 1681e(b), a plaintiff must allege facts plausibly indicating that (1) the CRA reported inaccurate information about the plaintiff; (2) the CRA was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (3) the plaintiff was injured; and (4) the CRA's negligence proximately caused the plaintiff's injury.  *Ahmad v. Experian Info. Sols., Inc.*, No. 23 Civ. 2222 (LJL), 2023 WL 8650192, at *5 (S.D.N.Y. Dec. 14, 2023); *Gestetner v. Equifax Info. Servs., LLC*, No. 18 Civ. 5665 (JFK), 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019).

To state a claim for willful noncompliance with Section 1681e(b), a plaintiff must allege (1) inaccuracy and (2) a failure to follow reasonable procedures that is (3) knowing or reckless.  *Ahmad*, 2023 WL 8650192, at *5.  A willfulness claim does

not require the plaintiff to plead actual damages or causation, *id.*, as the plaintiff who proves a willful violation may recover statutory damages. *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 240 (S.D.N.Y. 2014) (claims for willful violations under Section 1681n do "not require proof of actual damages, as the plaintiff may also recover statutory damages") (citation omitted); *Agu v. Rhea*, No. 09 Civ. 4732 (JS) (AKT), 2010 WL 5186839, at *6 (E.D.N.Y. Dec. 15, 2010) ("unlike Section 1681n, Section 1681o entitles plaintiffs only to actual damages, not statutory damages").

The pleading requirements for claims under Section 1681i are similar, except that the plaintiff must allege facts showing that the CRA failed to reasonably *reinvestigate* a disputed item. *Anderson v. Experian*, No. 19 Civ. 8833 (CM), 2019 WL 6324179, at *3 (S.D.N.Y. Nov. 26, 2019); *see also Rogers v. Equifax Info. Servs. LLC*, No. 23 Civ. 0537 (RPK) (TAM), 2024 WL 2862363, at *2 (E.D.N.Y. June 6, 2024) (to bring claims under Sections 1681e(b) and 1681i, "plaintiff must plausibly allege (among other things) that (i) her credit report contained disputed information that is inaccurate, and (ii) defendant failed to follow reasonable procedures to assure maximum possible accuracy of a report, *see* [15 U.S.C.] § 1681e(b), or to reinvestigate, *see id.* § 1681i"); *Manzano v. Trans Union (of Delaware) LLC*, No. 23 Civ. 5990 (JGLC) (JLC), 2024 WL 3194091, at *3 (S.D.N.Y. June 27, 2024) ("[t]o prevail under 15 U.S.C. § 1681i, a plaintiff must establish that it is facially plausible that a credit reporting agency posted inaccurate information and did not conduct a reasonable investigation").

Thus, "[a]s a threshold matter, a plaintiff must allege an inaccuracy to state a claim under either Section 1681e(b) or 1681i," *Spira v. TransUnion, LLC*, No. 23 Civ. 4319 (NSR), 2024 WL 2221662, at *3 (S.D.N.Y. May 16, 2024), "because if the information is not properly alleged as inaccurate, no further inquiry into the reasonableness of the procedures is necessary," *Manzano*, 2024 WL 3194091, at *4; *see also Anderson*, 2019 WL 6324179, at *3 ("The threshold issue under either provision is whether the challenged or disputed credit information is inaccurate."). "On the flip side, if there is an inaccuracy, to succeed, the plaintiff must [also] establish that the investigation was unreasonable." *Suluki v. Credit One Bank, NA*, 666 F. Supp. 3d 403, 410 (S.D.N.Y. 2023) (quoting *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022)).

## DISCUSSION

The Court finds below that (i) it may properly consider Plaintiff's documentary submissions attached to her Opposition, but not her newly-raised Section 1681c-2 claim (*infra* § A); and (ii) taking into account the documentary submissions, together with the attachments to the Complaint, Plaintiff plausibly alleges claims under Sections 1681e(b) and 1681i of the FCRA (*infra* § B).[11]  The Court also warns Plaintiff that further citations to nonexistent caselaw, as set forth in the Opposition, may subject her to sanctions (*infra* § C).

---

[11] As discussed above, the Court will construe Plaintiff's Complaint as asserting a related claim for violations of Section 1681e(b), to which Defendants' arguments challenging Plaintiff's Section 1681i claim equally apply.

A.      Consideration of Plaintiff's Opposition Papers

At the outset, the Court must decide whether, in assessing the adequacy of Plaintiff's allegations, it may consider the materials attached to Plaintiff's Opposition.  Given the scarcity of allegations in the Complaint, the Court's finding on this procedural question has an important bearing on the outcome of Defendants' motion.  Ultimately, due to Plaintiff's *pro se* status, the Court rejects Defendants' position that the attachments to the Opposition "cannot be considered on a motion to dismiss."  (Reply at 4).

It is well settled that a "district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."  *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).  And courts in this District regularly do so.  *See, e.g.*, *Stewart v. Medina*, No. 23 Civ. 880 (VB), 2024 WL 3106770, at *1 n.4 (S.D.N.Y. June 20, 2024) ("[b]ecause plaintiff is proceeding *pro se*, the Court considers new allegations in his opposition"); *Cullum v. Wyndham Hotels & Resorts Corp.*, No. 22 Civ. 9700 (LTS) (SN), 2024 WL 552494, at *2 n.4 (S.D.N.Y. Feb. 12, 2024) ("[i]n deciding Defendants' motions to dismiss this *pro se* complaint, it is appropriate for the Court to take into account the factual allegations contained in Plaintiffs' response papers"), *reconsideration denied*, 2024 WL 3104517 (S.D.N.Y. June 24, 2024); *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 22 Civ. 1138 (GHW), 2023 WL 5211054, at *3 n.2 (S.D.N.Y. Aug. 13, 2023) ("it is appropriate to consider materials outside the complaint . . . including documents that a *pro se* litigant attaches to her opposition papers") (cleaned up), *reconsideration denied*, 2023 WL 6603605 (S.D.N.Y. Oct. 7, 2023); *Swainson v.*

14

*Lendingclub Corp.*, No. 21 Civ. 5379 (GHW) (SLC), 2022 WL 2704629, at *6 (S.D.N.Y. June 24, 2022) (considering, in a *pro se* FCRA case, the "factual allegations contained in [Plaintiff's] opposition papers and other court filings"), *R&R adopted*, 2022 WL 2704486 (S.D.N.Y. July 12, 2022).

It is true, as Defendants note (*see* Reply at 4–5), that the Court's "[c]onsideration of allegations contained in Plaintiff's opposition [] is limited to allegations which are consistent with those made in [the Complaint]." *Johnson v. Target Corp.*, No. 17 Civ. 7535 (JSA) (KT), 2019 WL 1227784, at *5 (E.D.N.Y. Feb. 12, 2019) (citation omitted), *R&R adopted,* 2019 WL 1253467 (E.D.N.Y. Mar. 13, 2019).  But Defendants offer no support for their conclusory assertion that "Plaintiff's allegations in her new evidence are inconsistent with those made in her Complaint" (Reply at 5), and the Court perceives no inconsistency.  To the contrary, Plaintiff's documentary submissions overall—*i.e.*, the Credit Report, the letters, the FTC Report, the Affidavit, and the Claim Form—are notably consistent.  That is particularly so with respect to Plaintiff's allegations as to the four accounts which were fraudulently opened and the other accounts with reported inaccuracies, *see infra* § B(1), which Defendants do not address at all in their Reply.[12]

Defendants further question the authenticity of the undated letter addressed to Experian, apparently as an additional reason why the Court should disregard

---

[12] Defendants' cited authorities do not support their position.  (*See* Reply at 4–5).  In *Johnson*, the court considered factual allegations in Plaintiff's opposition memorandum that were consistent with the complaint.  *See Johnson*, 2019 WL 1227784, at *8 & n.6.  And in *Allen v. Hand*, No. 09 Civ. 1388 (GTS/GHL), 2010 WL 2682248 (N.D.N.Y. July 2, 2010), the court declined to consider new factual allegations made for the first time in plaintiff's objections to a magistrate judge's report and recommendation, not in plaintiff's opposition papers to defendant's motion.  *Id.* at *5.

that particular attachment to the Opposition.  Defendants represent that Experian has "exhaustively searched its systems and does not have a record of [the] letter." (Reply at 4).  To the extent there is a factual dispute regarding whether or not Plaintiff sent this letter to Experian, it would be inappropriate for the Court to resolve that dispute in Defendants' favor at this juncture.  Ultimately, though, the dispute is beside the point.  Of import here are the specific factual allegations in the letter—such as Plaintiff's representations that certain accounts were opened fraudulently and previously disputed by her on multiple occasions—not whether Experian received this particular letter.  (*See* Dkt. 29-1 at 1–2).

The Court will therefore consider Plaintiff's documentary submissions attached to her Opposition.  The Court will not, however, consider the new "counterclaim" Plaintiff asserts in the Opposition itself under Section 1681c-2 of the FCRA.  While courts will consider factual allegations in a *pro se* plaintiff's opposition that are consistent with those in the complaint, as well as "claims alleged for the first time in motion papers [that] could have been asserted based on the facts alleged in the complaint," *Vlad-Berindan v. MTA N.Y.C. Transit*, No. 14 Civ. 675 (RJS), 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014), "entirely new claims are not given such liberal treatment."  *Id.* (cleaned up); *see also Ebalu v. N.Y.C. Police Dept.*, No. 21 Civ. 6476 (LJL) (SN), 2022 WL 4485920, at *3 (S.D.N.Y. June 21, 2022) ("A *pro se* plaintiff may not raise entirely new causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts

alleged in the complaint") (cleaned up), *R&R adopted*, 2022 WL 4485377 (S.D.N.Y. Sept. 27, 2022).

Nowhere in the Complaint, or attachments thereto, does Plaintiff state that she was the victim of identity theft or informed Defendants of the same. Nor does Plaintiff make any allegations from which the Court could draw those inferences. Due to these omissions, Plaintiff could not have asserted a claim under Section 1681c-2 based on the facts alleged in her initial submissions. *See Jiminez v. Barclays Bank Delaware*, No. 17 Civ. 7494 (SJ) (SMG), 2018 WL 4376459, at *3 (E.D.N.Y. Aug. 1, 2018), *R&R adopted*, 2018 WL 4374910 (E.D.N.Y. Sept. 13, 2018) (noting that to state a claim under Section 1681c-2, a plaintiff must allege facts showing Plaintiff notified a CRA of an alleged identify theft).[13]

## B.  Assessment of the Sufficiency of Plaintiff's Pleading

The Court thus turns to an assessment of whether Plaintiff adequately states a claim for relief under Sections 1681e(b) and 1681i of the FCRA. Defendants argue that Plaintiff fails to sufficiently allege: (1) there are any inaccuracies in her Credit Report; (2) Defendants lacked reasonable procedures or failed to conduct a reasonable reinvestigation; and (3) any actual damages resulting from the purported violations. (Def. Br. at 4–8).

---

[13] Moreover, even if the Court had discretion to consider this claim, it would not exercise that discretion given that Plaintiff's Section 1681c-2 claim is mentioned only in her Opposition, which, as noted above and discussed further below (*see infra* § C), appears to have been prepared by ChatGPT or a similar artificial intelligence program.

### 1. Inaccuracy

The Court finds Plaintiff adequately alleges the threshold element of a cause of action under Sections 1681e(b) and 1681i: it is, at a minimum, "facially plausible" that the CRAs "posted inaccurate information" on her Credit Report. *Manzano*, 2024 WL 3194091, at *3.

Defendants primarily argue that the Complaint itself fails to allege sufficient facts to plead inaccuracy because neither Plaintiff's annotations to her Credit Report, nor the July 2023 letter attached to the Complaint, explains "*why* any of the information identified" is inaccurate. (Def. Br. at 5 (emphasis in original)). The Court is inclined to agree with Defendants on this point. *See, e.g.*, *Gestetner*, 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019) (finding plaintiff failed to plead inaccuracy by merely pointing out three different delinquency dates listed on his credit report); *Mitchell v. Experian Info. Sols., Inc.*, No. 22 Civ. 5883 (RPK) (RER), 2023 WL 2990479, at *3 (E.D.N.Y. Apr. 18, 2023) (dismissing Section 1681i claim where the plaintiff failed to specify "*what* information" Experian inaccurately reported or "why it was allegedly false, or any other information that could support such a claim") (emphasis in original) (cleaned up).

Plaintiff, however, adequately specifies in the attachments to her Opposition what information is inaccurate and why. First, at least four accounts that appear on the Credit Report—Barclays GAP, NYU, Discover, and Acima Digital—were, as alleged, fraudulently opened in Plaintiff's name by means of identity theft. In the letter attached to her Opposition, Plaintiff separately states as to each of these accounts: "[t]his is not my account." (Dkt. No. 29-1 at 1–2). With respect to the

18

NYU account in particular, Plaintiff represents she has "never attended this university." (*Id.* at 1). Plaintiff also identifies three of these accounts in her identity theft Affidavit as having been "opened fraudulently" and represents the creditors associated with all four accounts made inquires that "appear on [her] credit report as a result of this identity theft." (*Id.* at 11–12). Lastly, Plaintiff lists each of the four accounts in her FTC Report and represents, under "penalty of perjury," the accounts are not hers and need to be removed from her Credit Report. (*Id.* at 15–16).

Furthermore, although Plaintiff does not allege that the MCU or Self Inc. accounts were fraudulently opened, she adequately identifies inaccuracies in the information reported for those accounts. With respect to the MCU account, Plaintiff states in the letter attached to her Opposition that the "date of last payment" is wrong, notes the incorrect dates currently reported by Experian and Trans Union, and provides the "actual date" that "should have been" reported (July 5, 2021). (Dkt. No. 29-1 at 1). As for the Self Inc. account, Plaintiff states she "sent out multiple disputes for the late payment and incomplete last payment status." (*Id.*). The Court can reasonably infer, based on her Credit Report, that Plaintiff believes Experian's reporting of the "Payment Status" on this account as "Late 30 Days" is inaccurate and should be "current" (the status listed by the other CRAs), and the corresponding "Last Payment" date should be reported. (Dkt. No. 1-1 at 8–9).

Thus, based on these allegations, the Court finds Plaintiff adequately pleads inaccuracy. Plaintiff "both (1) identif[ies] the specific information on [her] credit

report that is inaccurate; and (2) explain[s] why the identified information is inaccurate." *Ahmad*, 2023 WL 8650192, at \*5 n.5; *see also Selvam v. Experian Info. Sols., Inc.*, 651 F. App'x 29, 31 (2d Cir. 2016) (finding on summary judgment plaintiff raised an issue of fact as to inaccuracies in his credit report based on the CRA's inclusion of an account that was opened without plaintiff's consent); *Tescher v. Experian Info. Sols., Inc.*, No. 21 Civ. 2266 (PMH), 2022 WL 564048, at \*1, 7 (S.D.N.Y. Feb. 23, 2022) (finding plaintiff met the threshold requirement of pleading inaccuracy where he alleged his "credit report specifically showed that [he] was late for two accounts, while in fact, [he] was only late for a single account").

### 2. Lack of Reasonable Procedures or Reasonable Reinvestigation

The Court further finds that Plaintiff adequately alleges Defendants failed to follow reasonable procedures or reasonably conduct a reinvestigation and that more specific allegations are not required at this stage of the litigation. Defendants take the position that Plaintiff must plead specific facts explaining "*how* [the CRAs] failed to follow reasonable investigation procedures" or "what actions [the CRAs] took—or failed to take—in response to plaintiff's disputes" to "establish the unreasonableness of procedures or investigations," which she fails to do. (Def. Br. at 7–8 (emphasis in original; citation omitted); *see also* Reply at 6–8). On the other hand, the Opposition asserts that demanding these specifics from Plaintiff at this early stage "is akin to demanding fruit from a barren tree." (Opp. at 4). Based on its own research, the Court rejects Defendants' position.

When considering the attachments to Plaintiff's Opposition as well as the attachments to the Complaint, Plaintiff alleges that, on multiple occasions, she brought the four fraudulently opened accounts that appear on her Credit Report to Defendants' attention. (Dkt. No. 1-1 at 3–4; Dkt. No. 29-1 at 1–2). She avers that over the course of a year, she specifically, but unsuccessfully, asked Trans Union to delete those accounts (Dkt. No. 1-1 at 3–4) and that she sent Experian her identity theft FTC Report (Dkt. No. 29-1 at 15–16). The Credit Report itself (as opposed to Plaintiff's annotations thereto) records that Plaintiff disputed each of these accounts, among others, and "disagree[d]" with the resolutions. (Dkt. No. 1-1 at 7–8, 20–21, 30, 33–34). While it appears the CRAs generally "resolved" the disputes by keeping the accounts on Plaintiff's Credit Report, as alleged, only Experian continued to report any information associated with the NYU and Acima Digital accounts. (Dkt. No. 1-1 at 30, 33–34). That Experian did so while other CRAs removed these particular accounts is an allegation that further suggests Experian's reinvestigation was not reasonable.

On the whole, Plaintiff therefore alleges not only specific inaccuracies, but that the CRAs were aware of these inaccuracies and continued reporting the information. The Court finds that this is sufficient to plausibly allege Defendants fell short of their obligation to conduct reasonable procedures or a reasonable reinvestigation under Section 1681e(b) or Section 1681i, respectively.

Numerous cases recognize that a plaintiff (particularly one proceeding *pro se*) cannot be expected to plead specific facts as to the procedures followed by CRAs or

furnishers of information, and decline to hold plaintiffs to the high pleading standard demanded by Defendants here. *See, e.g. Tescher*, 2022 WL 564048, at *7 (denying motion to dismiss in FCRA action despite plaintiff's "factually bare" allegations because "information about the precise nature of the investigation is uniquely in the hands of Defendant [and] Plaintiff cannot be expected to have much more information about the reasonableness of the investigation at this stage of the litigation than he has stated in his complaint") (cleaned up); *Haynes v. Transunion, LLC*, No. 19 Civ. 7157 (JS) (ARL), 2021 WL 3185581, at *5 (E.D.N.Y. July 28, 2021) ("at this early stage of the case, a plaintiff is required to plead only that the furnisher provided erroneous information to the [CRA], Plaintiff notified the [CRA] that the information was erroneous, the [CRA] notified the furnisher of the dispute, yet the inaccurate information remained on the credit report"); *Weiss v. Equifax, Inc.*, No. 20 Civ. 1460 (BMC), 2020 WL 3840981, at *2 (E.D.N.Y. July 8, 2020) ("I reject defendants' argument that, because plaintiff failed to allege facts as to defendants' procedures, the complaint fails to state a claim . . . [A]s a practical matter, a consumer understandably has little information as to the internal processes a CRA has implemented to ensure maximum accuracy of one's credit report");[14] *Friedman v. CitiMortgage, Inc.*, No. 18 Civ. 11173 (VB), 2019 WL

---

[14] The court in *Weiss* reached the separate conclusion that defendants' challenge to the complaint's lack of factual assertions as to the CRAs' procedures should be considered "an affirmative defense under the FCRA," *Weiss*, 2020 WL 3840981 at *2, a ruling which "departed from the weight of persuasive authority regarding the plaintiff's pleading burden on a section 1681e(b) [claim]," *Abdallah v. LexisNexis Risk Sols. FL Inc.*, No. 19 Civ. 3609 (MKB), 2021 WL 6197060, at *7 (E.D.N.Y. Dec. 30, 2021). For the sake of clarity, this Court does not follow *Weiss* in this regard and thus does not treat Defendants' arguments as an affirmative defense.

4194350, at *4 (S.D.N.Y. Sept. 3, 2019) (rejecting furnisher's argument that plaintiff failed to plausibly allege violations of FCRA because "[a]t this early stage of the case, plaintiff's allegations, though sparse, are sufficient"); *Williams v. Bayview Loan Servicing, LLC*, No. 14 Civ. 7427 (KAM) (LB), 2016 WL 8711209, at *6–7 (E.D.N.Y. Jan. 22, 2016) ("Plaintiffs cannot be expected to have much more information about the reasonableness of the investigation at this stage of the litigation than they have stated in their complaint . . . affording the *pro se* plaintiffs' allegations the leniency required in this context, the court concludes that they are sufficient to survive a motion to dismiss"); *Jones*, 982 F. Supp. 2d at 273 ("Courts have noted that a number of factors will determine the extent of the CRA's reinvestigation . . . Ultimately, it is up to the trier of fact to weigh these considerations in determining whether the CRA conducted a reasonable reinvestigation under section 1681i").

The authorities Defendants cite in support of their position do not compel a different result. (*See* Def. Br. at 6–8; Reply at 6–8 (citing *Cabrera v. Experian*, No. 21 Civ. 8313 (LTS), 2021 WL 5166980 (S.D.N.Y. Nov. 5, 2021); *Mitchell v. Experian Info. Sols., Inc.*, No. 22 Civ. 5883 (RPK) (RER), 2023 WL 2990479 (E.D.N.Y. Apr. 18, 2023))). Notably, the courts in both *Cabrera* and *Mitchell* only briefly addressed the adequacy of the plaintiff's reasonable procedure allegations, and did so as an additional basis for dismissal *after* finding that plaintiff fell far short of alleging inaccuracy. *See Cabrera*, 2021 WL 5166980, at *3 (plaintiff neither "specif[ied] the names, addresses, accounts, or other information that is inaccurate" nor explained

"why such information is inaccurate" . . . [m]oreover, Plaintiff [did] not allege any facts showing that Experian failed to follow reasonable reinvestigation procedures"); *Mitchell*, 2023 WL 2990479, at *3 (plaintiff alleged his report was not "100% . . . accurate," but failed to explain "*what* information Experian allegedly reported, deleted, or reinserted, why it was allegedly false, or any other information that could support such a claim, such as what actions Experian took—or failed to take— in response to plaintiff's disputes") (emphasis in original) (cleaned up).[15]

Because the plaintiffs in *Cabrera* and *Mitchell* did not even adequately allege what information the CRA should have been reinvestigating, it follows that the plaintiffs also failed to adequately allege how or why the reinvestigation was unreasonable. That is not the case here. Plaintiff has made concrete allegations that she alerted Defendants to fraudulent accounts improperly appearing on her Credit Report and that Defendants, after numerous requests, failed to make the necessary corrections. At this juncture, that is enough.

### 3. Damages

Finally, the Court finds that Plaintiff adequately alleges damages. Defendants argue that Plaintiff's damages allegations fall short because she "does not identify any specific credit she applied for or was denied" and provides "no facts related to claims of emotional or psychological harm." (Reply at 9–10; *see also* Def.

---

[15] Defendants also rely on *Frederick v. Cap. One Bank (USA), N.A.*, No. 14 Civ. 5460 (AJN), 2015 WL 5521769 (S.D.N.Y. Sept. 17, 2015), but in that case, while the plaintiff made specific allegations that the *furnishers* provided inaccurate information for his credit report despite his disputing those items, *id.* at *6, his claims against the CRAs "merely recite[d] the elements of the statute" and relied on purely "conclusory" allegations, *id.* at *7.

Br. at 8).  As noted above, Plaintiff is not required to plead actual damages to the extent she alleges Defendants acted willfully rather than negligently.  It is unclear, however, whether Plaintiff is alleging willfulness or claiming statutory damages: neither is specifically pled or mentioned in her submissions.

But even assuming Plaintiff has not properly pled a claim for statutory damages, she adequately alleges actual damages resulting from Defendants' purported violations of the FCRA.  Here again, Defendants' argument is unpersuasive because it ignores the attachments to Plaintiff's Opposition, and the Claim Form in particular.  In the Claim Form, Plaintiff specifies several instances where she "[t]raveled to the Caribbean to purchase real estate" in January 2022 and "got denied" because of the fraudulent accounts on her Credit Report; was "[d]enied for investment property with business partners" in June 2023 "due to these fraud accounts"; and sought therapy and consultation in June 2022 due to "stress [and] anxiety" from the inaccuracies in her Credit Report that led to her "get[ting] denied for just about everything."  (Dkt. 29-1 at 5–6).[16]

Thus, Plaintiff has adequately alleged actual damages resulting from Defendants' alleged violations of the FCRA.  "No further damages allegations are required at this stage." *Mader v. Experian Info. Sols., LLC*, No. 19 Civ. 3787 (LGS), 2020 WL 264396, at *5 (S.D.N.Y. Jan. 17, 2020) (denying dismissal of claim brought against Experian for its negligent noncompliance with Section 1681e(b)).

---

[16] Given the concern that Plaintiff's opposition *brief* was generated in part or entirely with artificial intelligence, the Court will disregard the damages allegations therein relating to "increased insurance premiums," which do not appear on the Claim Form.  (*See* Opp. at 3).

### C.  Warning to Plaintiff Moving Forward

As noted above, the Opposition submitted by Plaintiff includes citations to several nonexistent judicial opinions with false reporter numbers and describes them as cases that support Plaintiff's arguments.  The Opposition includes three such nonexistent cases: "*Clapper v. Unique Fin. Servs., Inc.*, 976 F.3d 830 (9th Cir. 2020)" (Opp. at 2, 4); "*Robinson v. Experian Info. Sols., Inc.*, 827 F.3d 1106 (9th Cir. 2016)" (*id.* at 2, 7); and "*Hill v. Trans Union LLC*, 985 F.3d 810 (7th Cir. 2021)" (*id.* at 3, 4, 7).[17]  Defendants suggest this is the result of Plaintiff's use of ChatGPT or similar artificial intelligence ("AI") to draft the Opposition.  (Reply at 2–3).  In light of recent high-profile cases involving fake citations generated by ChatGPT, there is certainly merit to that suggestion.

As the Second Circuit recently recognized, an attempt to persuade a court or oppose an adversary by relying on "non-existent precedent generated by ChatGPT" is an "'abuse of the adversary system.'"  *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)). Lawyers who have engaged in this abusive practice have been subject to sanctions. *See Mata*, 678 F. Supp. 3d at 464–66 (imposing sanctions, including a $5,000 penalty, on two attorneys and a law firm in connection with their submission to the court of nonexistent cases generated by ChatGPT); *see also Park*, 91 F.4th at 615–16

---

[17] While there are decisions that span those federal reporter numbers, each has an entirely different caption, was issued by a different court, and is irrelevant to the issues in this action.  *See United States v. Hamed*, 976 F.3d 825 (8th Cir. 2020); *Rosebud Mining Co. & Parkwood Res., Inc. v. Mine Safety & Health Admin.*, 827 F.3d 1090 (D.C. Cir. 2016); *Ditucci v. Bowser*, 985 F.3d 804 (10th Cir. Jan. 21, 2021).

(referring attorney who submitted a brief with a nonexistent case generated by ChatGPT to the Court's Grievance Panel).

The Court recognizes it is possible Plaintiff is not aware of the risk that ChatGPT and similar AI programs are capable of generating fake case citations and other misstatements of law. The Court also recognizes that it may be more difficult for a *pro se* litigant without access to computerized legal databases such as Westlaw or LEXIS to check the veracity of case citations generated by AI programs. Defendants have not sought sanctions against Plaintiff, and the Court does not believe any sanctions would be appropriate.

Nevertheless, it is no more acceptable for a *pro se* litigant to submit briefs with fake case citations than it is for a lawyer to do so. As one court has noted in admonishing a *pro se* litigant who engaged in such conduct, although courts make "some allowances for [a] *pro se* Plaintiff's failure to cite to proper legal authority, courts do not make allowances for a Plaintiff who cites to fake, nonexistent, misleading authorities." *Morgan v. Cmty. Against Violence*, No. 23 Civ. 353-WPJ/JMR, 2023 WL 6976510, at *7 (D.N.M. Oct. 23, 2023) (cleaned up). "Quite obviously, many harms flow from such deception—including wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few)." *Id*. at *8. Now that she is definitively on notice of the risks, Plaintiff must not allow this to happen again.

Accordingly, **Plaintiff is hereby advised that any further filings with citations to nonexistent cases may result in sanctions, such as her**

**submissions being stricken, filing restrictions or monetary penalties being imposed, or the case being dismissed**. *See Morgan*, 2023 WL 6976510, at *8–9 (issuing similar warning to *pro se* litigant); *see also Koehl v. Bernstein*, 740 F.3d 860, 863 (2d Cir. 2014) (holding district court did not abuse its discretion by imposing sanctions on *pro se* plaintiff); *Benitez v. King*, 298 F. Supp. 3d 530, 539 (W.D.N.Y. 2018) ("[i]t is well established that Rule 11"—permitting the court to impose sanctions—"applies to *pro se* litigants").

## CONCLUSION

For the reasons set forth above, the undersigned recommends that Defendants' motions to dismiss be **DENIED**.

DATED:     New York, New York
           July 26, 2024

_____
The Honorable Gary Stein
United States Magistrate Judge

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from the date of this Report & Recommendation to file written objections thereto. *See also* Fed. R. Civ. 6(a), (b), and (d). Any such objections shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be directed to Judge Torres. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner v. Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).